MENDELSON, Appellant, v. BLATZ BREWING COMPANY and others, Respondents.

*February 2—March 8, 1960.*

488

For the appellant there was a brief by *Fisher & Fisher* of Janesville, and oral argument by *Cleland P. Fisher*.

For the respondents there was a brief by *Dougherty, Ryan & Campbell* of Janesville, and oral argument by *Glen R. Campbell*.

CURRIE, J. The complaint alleges a conspiracy on the part of the respondents Grimm and Harrison to perpetrate

two unlawful acts. The first unlawful act charged is that of causing the plaintiff's removal as general manager of the corporation to further a scheme of the defendants wholly unrelated to that of promoting the welfare of the corporation. The second is that of coercing the plaintiff by economic duress to sell his stock in the corporation to the respondents for much less than its fair market value. If the allegations of the complaint are sufficient to spell out a cause of action in either respect, the complaint is not demurrable on the ground of failure to state a cause of action.

A conspiracy to cause a breach of contract is actionable. *Martens v. Reilly* (1901), 109 Wis. 464, 84 N. W. 840; *Holsinger v. Herring* (1929), 207 Iowa 1218, 224 N. W. 766; and *Falstaff Brewing Corp. v. Iowa Fruit & Produce Co.* (8th Cir. 1940), 112 Fed. (2d) 101. The *Holsinger Case* defines a civil conspiracy as follows (p. 1225) : "Conspiracy 'is a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.' " This is substantially the same definition as set forth in *Martens v. Reilly, supra,* at page 473. As pointed out in the latter case the word "unlawful" employed in such definition is not confined to criminal acts but includes all wilful, actionable violations of civil rights.

The plaintiff's employment by the corporation at a salary of $9,000 per year established a contractual relationship between them. The complaint fails to allege that such employment was for any fixed period, and, therefore, it must be assumed for purposes of the demurrer that it was terminable at will by either party. However, the weight of authority is to the effect that a cause of action is maintainable for a wrongful interference by a third party with an employment relationship terminable at will. Annotations entitled, "Liability for procuring breach of contract," 84 A. L. R.

43, 60, and 26 A. L. R. (2d) 1227, 1258. Prosser, Law of Torts (2d ed.), p. 726, sec. 106, states the law on this point as follows:

"However, eminent legal writers to the contrary notwithstanding, the overwhelming majority of the cases have held that interference with employments or other contracts terminable at will is actionable, since until it is terminated the contract is a subsisting relation, of value to the plaintiff, and presumably to continue in effect. The possibility of termination does, however, bear upon the issue of the damages sustained, and it must be taken into account in determining the defendant's privilege to interfere."

Wisconsin has aligned itself with the majority in holding that a cause of action is maintainable for unlawful interference with an employment contract terminable at will. *Johnson v. Aetna Life Ins. Co.* (1914), 158 Wis. 56, 147 N. W. 32.

Restatement, 4 Torts, p. 49, sec. 766, states that "one who, *without a privilege to do so,* induces or otherwise purposely causes a third person not to perform a contract with another, . . . is liable to the other for the harm caused thereby." (Emphasis supplied.) The respondents contend that they, because of their position as majority stockholders, enjoyed a position of absolute privilege when they caused the corporation to dispense with the plaintiff's services as general manager. The cases of *Vassardakis v. Parish* (D. C. N. Y. 1941), 36 Fed. Supp. 1002, and *Tye v. Finkelstein* (D. C. Mass. 1958), 160 Fed. Supp. 666, directly pass upon such issue of privilege where an employee of a corporation is discharged at the instigation of a corporate stockholder or executive.

In *Vassardakis v. Parish, supra,* one count of the complaint alleged that the defendant Myers, who was an officer and director of the corporation which had employed the

plaintiff, induced the defendant Parish, who was the president and sole stockholder of such corporation, to discharge the plaintiff. Such count further alleged that in so doing Myers was pursuing a scheme of his own to secure control of the corporation. It was contended in behalf of Myers that he was immune from liability because of his privileged position as an officer and director of the corporation. The court denied the defendants' motion for summary judgment and stated (p. 1005):

"Whether or not Myers was acting with justification and in furtherance of the interests of the corporation and within the general scope of his authority or for personal wrongful motives ought to be determined by the evidence produced at a trial."

The fact situation in *Tye v. Finkelstein, supra,* was that the defendant majority stockholder procured the discharge of the plaintiff as an employee of the corporation, and the plaintiff sought to hold the defendant liable in damages. The court denied the defendant's motion for summary judgment. It was determined that the plaintiff could hold the defendant liable for substantial damages, even though the employment contract was terminable at will, if the plaintiff could prove that the defendant instigated the discharge without justification. The court in its opinion stated (p. 668):

"The plaintiff must establish that instead of acting 'within the privilege,' the defendant acted outside of it, that is to say, from 'an improper motive.' It might be to the company's advantage to break the contract. It is not enough to show that defendant knew, or intended, that plaintiff would be harmed thereby, or even that he was gratified by such a prospect. I hold that 'malice' will not suffice to destroy a privilege unless it is shown to have been the sole motive."

Prosser, Law of Torts (2d ed.), p. 738, sec. 106, points out that a defendant, who otherwise would stand in a posi-

tion of privilege in causing a termination of contract, enjoys no privilege if his object is to put pressure upon the plaintiff and coerce him into complying with the defendant's wishes in some collateral matter. In the instant complaint it is alleged that the respondents brought about the plaintiff's discharge in order to further their improper scheme of acquiring his stock in the corporation for less than its worth. The other motive alleged is that the discharge was sought in order to give the managership to the inexperienced son of the respondent Grimm. Neither of such motives lay within the privilege possessed by the respondents as majority stockholders to take whatever action they deemed advisable to further the interests of the corporation.

One of the contentions advanced by the respondents is that the complaint is defective because it does not allege any facts which might tend to show "bad faith" on the part of Grimm and Harrison. Apparently respondents assume that it is necessary for the plaintiff to allege malice as an element of a cause of action for procuring the termination of the plaintiff's employment as manager. However, this court declared in *Johnson v. Aetna Life Ins. Co., supra,* that malice is supplied when the act of procuring the discharge is done with an improper motive. Furthermore, in *E. L. Husting Co. v. Coca Cola Co.* (1931), 205 Wis. 356, 366, 237 N. W. 85, 238 N. W. 626, 84 A. L. R. 22, this court quoted with approval from *Campbell v. Gates* (1923), 236 N. Y. 457, 141 N. E. 914, wherein it was declared that the act of a person, who procures another to breach a contract, is malicious if the actor acts intentionally and knowingly for "unworthy or selfish purposes."

For a further discussion of the element of malice in causes of action for interference with contract rights, see Harper, Interference with Contractual Relations, 47 Northwestern University Law Review (1953), 873, 876, and Carpenter,

Interference with Contract Relations, 41 Harvard Law Review (1928), 728, 734, 735. We quote from the latter article as follows (p. 734):

"The courts which uphold liability for interference with contract do not use the word malice in the sense of malevolence, spite, or ill will. They probably use it to mean merely intentionally inducing a breach of contract without justification."

In view of the foregoing pertinent authorities we are satisfied that the complaint does state a cause of action for conspiracy to wrongfully procure the termination of the plaintiff's employment as manager of the company. Thus it was error for the learned trial court to sustain the respondents' demurrer on the ground that the complaint failed to state a cause of action.

This disposition of the appeal renders it unnecessary for us to determine whether the complaint further states a cause of action for damages sustained as a result of the alleged conspiracy to coerce the plaintiff into selling his stock in the corporation for less than its fair market value. Wisconsin is one of the jurisdictions which has adopted the modern view which holds that contracts and transfers may be voided when procured by business or economic compulsion, as well as by physical coercion. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* (1924), 183 Wis. 47, 197 N. W. 352. See also Anno. 79 A. L. R. 655, 657, 658. It should be pointed out that the twenty-four-hour option given by the respondents to either buy or sell did not require the plaintiff to do either. Instead he could have retained his stock and continued in his status as a minority stockholder.

However, the instant complaint does not pray for a rescission of the stock transfer because of duress, but seeks to recover damages for the alleged wrong perpetrated upon the plaintiff by reason thereof. The briefs of the parties wholly

fail to present any authorities on the issue of whether a cause of action for damages may be maintained by one who is coerced by duress into making a transfer as distinguished from one merely seeking voidance of the transfer. The customary remedy sought is voidance of the transfer so as to recover the asset transferred. The only authority we have been able to find which holds that the party so coerced may maintain a cause of action for damages is *Furman v. Gulf Ins. Co.* (8th Cir. 1946), 152 Fed. (2d) 891. However, the opinion in that case relies on a statement appearing in a comment in Restatement, 4 Torts, pp. 415, 416, sec. 871, which we have serious doubt is applicable. We urge the parties to brief this issue and present applicable authorities thereon to the trial court so that such court may have the benefit thereof at the trial of the action upon the merits.

One additional issue is presented by the instant appeal and that is whether the demurrer is sustainable on the ground that the complaint improperly unites several causes of action. The trial court failed to pass on this. As we construe the complaint, it sets forth but one cause of action for conspiracy involving two different elements of damages. While the allegations attempting to link the Blatz Brewing Company to the conspiracy are extremely weak, the weakness of such allegations is not material to the issue confronting us. The cause of action attempted to be alleged does affect all of the parties to the action. Therefore, there is no improper joinder of causes of action.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order overruling the demurrers interposed by the defendants Grimm and Harrison.