ABDELLA, Appellant, v. CATLIN, and others, Respondents.†

*No. 75–488. Submitted on briefs May 4, 1977.—*
*Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 517.)

† Motion for rehearing denied, with costs, on August 24, 1977.

For the appellant the cause was submitted on the brief of *Peter J. Abdella, pro se.*

For the respondents there was a joint brief by *Edward R. Bollenbeck* of Appleton for respondent Ben W. Karpinski.

For respondent Gordon MYSE the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Theodore L. Priebe,* assistant attorney general.

ROBERT W. HANSEN, J. There is a ruralistic anecdote of ancient enough vintage that has a tourist asking a small-town storekeeper how to get to another town, not too far away. After discussing various ways to go, and finding something wrong with each of them, the small-town storekeeper concluded, "Mister, if I was going to go

to so-and-so, I wouldn't start from here." In the case before us, the destination of the trip can be located, but the puzzling question is, Where do we start?

One starting point could be appellant's claim of entitlement to a default judgment against defendants Karpinski and Catlin. As to defendant Karpinski, the trial court found no personal jurisdiction of an out-of-state resident.

As to defendant Catlin, the applicable statute provides that a default judgment "may" be entered if the time for joining issue has expired.[1] The question of whether a default judgment is to be entered is a matter for the exercise of the trial court's discretion.[2] Here there was no abuse of discretion whatever, the trial court finding:

> "There is no default about it. He did make the motion for summary judgment. You did make the motion for change of venue. [Apparently both motions referred to were made by Catlin and his attorney.] You were all here busily doing what you thought was a proper thing to do. Certainly a person under those circumstances should not be charged with default. . . ."

Departure point for review could be this plaintiff's claim of error in the trial court's sustaining the demurrer of defendant Catlin. The difficulty in going down this road is that it is difficult to locate. The complaint of Abdella, appearing *pro se*, against adversary counsel, appears to be that counsel did not appear at a pretrial conference and at the time of selection of jury in the initial action, and that Catlin's actions were adverse to the interests of Abdella.

Even if that could be established, under the adversary system, counsel for Karpinski in the first case was not

[1] Sec. 270.62, Stats., entitled *Default judgment,* governing sec. 263.05, Stats., requiring demurrer or answer within twenty days.

[2] *Van Brakel v. Moeller,* 60 Wis.2d 179, 208 N.W.2d 355 (1973); *Production Credit Asso. v. Goede,* 50 Wis.2d 509, 514, 184 N.W.2d 830 (1971).

only permitted, but required, to represent his client competently,[3] and zealously[4] as an advocate in that lawsuit. Considering such professional responsibility to represent the interests of his client, we find in this complaint no allegation of improper acts on the part of Attorney Catlin.[5] (Since there were no separate allegations against defendant Karpinski, we also find his actions to have been proper under the adversary system. Accordingly, it is unnecessary to reach the issue of lack of personal jurisdiction over Karpinski.)

However, finding no fault or even allegations of improper conduct by defendants Catlin and Karpinski in this complaint does not end the inquiry in a civil action for damages for an executed conspiracy. Civil conspiracy in this state has been defined as ". . . a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful."[6] Here the plaintiff's claim is not of unlawful means used to accomplish a purpose not unlawful. Rather, the claim is that the defendants combined by some concerted action to accomplish an unlawful purpose, to wit: denial of a fair trial to Abdella.

While concert of action is alleged, the acts upon which plaintiff Abdella relies are those of the trial judge in the

[3] See: Canon 6, *Code of Professional Responsibility*, adopted by this court in 43 Wis.2d (1969).

[4] See: Canon 7, *Id.* at lxi.

[5] *Cf., Goerke v. Vojvodich*, 67 Wis.2d 102, 226 N.W.2d 211 (1975). (Complaint failed to state cause of action against attorney in fraud or wrongful conduct where there was no allegation conduct was done for purpose of misleading or misinforming the other party.)

[6] *Radue v. Dill*, 74 Wis.2d 239, 241, 246 N.W.2d 507 (1976). *See also: Mendelson v. Blatz Brewing Co.*, 9 Wis.2d 487, 490, 101 N.W.2d 805 (1960); *Singer v. Singer*, 245 Wis. 191, 195, 14 N.W.2d 43 (1944).

first action, defendant Judge MYSE. The judicial acts challenged, the complaint reveals, are these: (1) The judge told plaintiff that, if it was agreeable to Abdella so to do, the court would conduct the impanelling of the jury in the absence of Karpinski's counsel; (2) the judge "injecting his own objections time and again" specifically "interposed his own objection to the plaintiff's questioning of the defendant"; (3) the judge "ridiculed" Abdella —acting as his own counsel—by commenting, "Have you, ladies and gentlemen, in your wildest imagination ever envisioned asking your wife questions under oath?" and (4) the judge erred, in Abdella's opinion, in making certain rulings and in permitting the jury verdict to stand. Additionally, the complaint alleges that, at the pretrial conference in the prior action, the trial judge asked Karpinski, "Would you be willing to accept the status quo?" Karpinski refused and the pretrial ended.

All of the judge's acts now complained of were within the judicial framework: seeking pretrial settlement, ruling on evidence, asking questions of witnesses and instructing the jury. We see basis for a successful appeal of the prior judgment entered against Abdella in the particulars now set forth in plaintiff's complaint. However, timely appeal, not collateral attack later on, is the prescribed remedy for error committed by a trial judge and claimed to be prejudicial error.

On the merits of the instant appeal, we find no merit to plaintiff's claim that an action for civil conspiracy could rest on what is here alleged as trial court impropriety. What we do see is an attempt by plaintiff Abdella to cloak in civil conspiracy clothing claims of trial court error which could have been the subject of an appeal, but were not taken.

What was here attempted by plaintiff Abdella, and unsuccessfully so, makes abundantly clear what the United States Supreme Court had in mind when it clearly and firmly reaffirmed the immunity of judges from liability for damages for acts committed within their judicial discretion.[7] Judicial immunity, the high court ruled, is for the protection of the public, ". . . whose interest it is that the judges should be at liberty to exercise their function with independence and without fear of consequences."[8] In *Pierson*, the nation's highest tribunal properly commented:

"It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation."[9]

In *Pierson*, the United States Supreme Court held that "this settled principle of law was not abolished by §1983, which makes liable 'every person' who under color of law deprives another person of his civil rights."[10] As it had done earlier as to immunity for legislators for acts within the legislative role,[11] and was to do later as to immunity for prosecutors for acts within the prosecutorial

[7] *Pierson v. Ray*, 386 U.S. 547 (1967).

[8] *Id.* at 554, citing cases.

[9] *Id.* at 554.

[10] *Id.* at 554. 42 U.S.C. sec. 1983, being a restatement of R.S. sec. 1979, Laws of 1874, Title XXIV, in turn a revision of the Act of April 20, 1871, 17 Stat. 13, being in turn a revision of Act of May 31, 1970, 16 Stat. 140, being in turn a revision of Act of April 9, 1966, 14 Stat. 27.

[11] *Tenney v. Brandhove*, 341 U.S. 367 (1951).

function,[12] the high court thus made clear the immunity of judges for acts within the judicial function. This immunity was reaffirmed even under an Act of Congress which, on its face, applied to the deprivation by *any* person of the constitutional rights of another "under color of law."[13]

Recently, in a 4–3 decision, this court held an action under sec. 1983 of the revised federal statute could be brought in the state courts of Wisconsin.[14] However, even if the complaint of plaintiff Abdella were construed to be a claim of deprivation of a federal constitutional right under sec. 1983, it would run into the judicial immunity holding of *Pierson,* and would thus fail.

Constitutional authorities might differ as to whether the strong words of the *Pierson* reaffirmation of judicial immunity for acts in the performance of judicial duties is binding on this court, aside from its mandated construction of sec. 1983 as not encroaching upon the concept of judicial immunity. This court has stated the rule as to judicial immunity:

"In this country it is uniformly held that where an officer has jurisdiction of the person and of the subject matter, he is exempt from civil liability for his acts so long as he acts within his jurisdiction and in a judicial capacity."[15]

[12] *Imbler v. Pachtman,* 424 U.S. 409 (1976).

[13] *Pierson v. Ray, supra,* n. 6, at 554, 555, the high court holding: "The immunity of judges for acts within the judicial role is equally well established, and we presume that Congress would have specifically so provided had it wished to abolish the doctrine."

[14] *Terry v. Kolski,* 78 Wis.2d 475, 254 N.W.2d 704 (1977).

[15] *Kalb v. Luce,* 234 Wis. 509, 514, 291 N.W. 841 (1940). However, while conceding in *Kalb* that there was a strong inference that the county judge there "was acting in his judicial capacity," this inference was not sufficient to overthrow the direct allegation with respect to collusion and direction.

We now hold, applying *Pierson* rationale, that even direct allegations of collusion and direction are not sufficient to breach the wall of judicial immunity where a judge is sued as to acts committed in his judicial capacity where such judge has jurisdiction of the person and subject matter involved.

Thus, as to the policy of not exposing judges in this state to the type of action brought in the instant case and as to not permitting such collateral attack upon an unappealed judgment of the circuit court, we would not reach a conclusion different from *Pierson* if we could. The logic of the *Pierson* holding is made all the more unassailable by what was unsuccessfully sought to be accomplished in this action by this plaintiff.

*By the Court.*—Judgment and orders affirmed.

† Motion for rehearing denied, with costs, on August 24, 1977.