**ROLLINS BURDICK HUNTER OF WISCONSIN, INC., a Wisconsin corporation, Plaintiff,**

v.

**Max E. LEMBERGER, Defendant.**

**No. 83–C–761.**

United States District Court, E.D. Wisconsin.

May 6, 1985.

Jeffrey P. Clark, Milwaukee, Wis., for plaintiff.

Joseph W. Anthony, Minneapolis, Minn., John T. Clark, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

### BACKGROUND

This action was initiated on June 10, 1983, when the plaintiff filed its original complaint, alleging principally that the defendant, a former employee, had breached his agreement not to compete by soliciting and eventually securing the account of one of the plaintiff's customers following his termination from the plaintiff's employ. Specifically, the complaint states that, in

consideration for the defendant's continued employment with the plaintiff, the parties had, on or about January 24, 1981, entered into an "Agreement Not To Compete", the relevant provision of which is as follows:

If Employee terminates his employment with Agency for any reason or if Agency terminates his employment for cause, Employee agrees that he will not, directly or indirectly (through partners, agents, employers, employees or any other persons acting for Employee) for a period which is the lesser of (i) two years or (ii) Employee's period of employment from the date of this Agreement until termination, solicit, contact or otherwise do any competitive business with any individual, firm, corporation, partnership, organization or association who was a customer or client of Agency during a period which is the lesser of (i) two years or (ii) Employee's period of employment from the date of this Agreement until termination.

Exhibit A to Plaintiff's *Complaint* at 1 (Paragraph 2) (January 24, 1981). The plaintiff further alleges that, following his termination of employment as of April 30, 1983, the defendant solicited one of the plaintiff's customers for the purpose of securing that customer's business account; that the customer subsequently terminated its relationship with the plaintiff, causing it certain financial losses in excess of $10,-000.00; and, significantly, that despite the plaintiff's demands to cease and desist such solicitation activities, the defendant continues to compete with his former employer, in violation of the non-competition agreement of January 24, 1981.

Framing its complaint under theories of breach of contract, tortious interference with a contractual relationship, and unjust enrichment, the plaintiff seeks judgment in the amount of those commissions, monies, and profits purportedly derived by the defendant from his wrongful conduct, along with such other monetary damages as the plaintiff may have incurred as a result of the defendant's alleged violation of the agreement not to compete. By its ad damnum clause, the plaintiff also seeks prelimi-

nary and permanent injunctive relief, preventing the defendant and his agents "from soliciting, contacting or otherwise doing any competitive business with any individual, firm, corporation, partnership, organization or association which was a customer or client of the Agency during the term of defendant's employment with the Agency until after April 30, 1985." Plaintiff's *Complaint* at 5 (June 10, 1983).

By its answer of July 19, 1983, the defendant admits several of the foundational, factual allegations in the complaint, denies all substantive charges set forth therein, and raises some eleven affirmative defenses—among them, that the January 24, 1981 agreement not to compete is unsupported by sufficient consideration and was entered into under duress; that the plaintiff is estopped from asserting any rights under that agreement based on its consent to and approval of the defendant's employment with a competitive general insurance agency—namely, North Star Casualty Services, Inc.—consent and approval upon which the defendant detrimentally relied; and that, in any event, the second paragraph of the non-competition agreement is overly broad, unduly restrictive, and constitutes an unreasonable restraint of trade and competition. The defendant further alleges affirmatively that the plaintiff's complaint fails to state a claim for relief, that the Court lacks personal jurisdiction over him as a party to this action, and that the lawsuit is improperly venued in this federal district.

The defendant also counterclaims against the plaintiff for damages in the amount of $1,600.00, purportedly representing the unpaid balance of the defendant's salary for the month of April of 1983, pursuant to a certain oral agreement between the parties for payment and receipt of employment services. In addition to his request for judgment on the counterclaim, the defendant seeks dismissal of the complaint against him and an award of those costs and reasonable attorneys' fees incurred in the defense of this matter.

On August 3, 1983, the plaintiff filed its reply to the defendant's counterclaim, denying all material allegations therein and articulating three affirmative defenses of its own—namely, that the alleged agreement upon which the counterclaim moves is unsupported by sufficient consideration, that the defendant has failed to mitigate his claim to damages, and that the income he earned as an employee of North Star Casualty Services, Inc. during the month of April of 1983 should be offset against any ultimate award of damages. The plaintiff requests judgment dismissing the defendant's counterclaim on the merits and awarding it those expenses attendant upon its defense.

Pursuant to the ad damnum clause of the original complaint, the plaintiff, on September 26, 1983, moved, under Rule 65(a) of the Federal Rules of Civil Procedure, "to enjoin defendant from further and continued violation of his non-competition agreement with plaintiff and to restrain defendant from further tortious interference with the plaintiff's contractual relationships with its customers." Plaintiff's *Motion for Preliminary Injunction* at 1 (September 26, 1983). Accompanying that motion was a supporting memorandum of law and the affidavits of Franklyn T. Thatcher, the president of that division of the plaintiff for which the defendant formerly worked, and of plaintiff's counsel, Jeffrey P. Clark, who directs the Court's attention to relevant portions of the defendant's deposition transcript.

On October 12, 1983, the defendant filed its memorandum in opposition to the plaintiff's Rule 65(a) motion, accompanied by the affidavits of the defendant himself and of Allin M. Karls, president of North Star Casualty Services, Inc.—the corporation that apparently employed the defendant following his termination with the plaintiff. Finally, on October 24, 1983, the plaintiff filed a reply brief in support of its petition for preliminary injunctive relief; that memorandum was supported by a supplemental affidavit of Franklyn T. Thatcher, in principal response to the affidavits offered by the defendant in opposition.

Following completion of the briefing schedule on the plaintiff's request for injunctive relief, the Court, on November 9, 1983, conducted a conference call with counsel for both parties and, based on their representations at that time, scheduled a hearing for December 2, 1983. As a result of conflicts with the Court's criminal docket, the hearing was eventually rescheduled for March 8, 1984. However, in the week immediately preceding that hearing date, the parties filed and served a series of letters, affidavits, and memoranda, all with respect to the impact on the pending motion for preliminary relief of the defendant's acceptance of a new position with the Great Global Assurance Company in Scottsdale, Arizona.

Although counsel articulated some initial disagreement as to the effect of that change in employment for purposes of the Rule 65(a) motion, they subsequently advised the Court, during the conference call of March 7, 1984, that their clients had, in fact, stipulated to the terms of a proposed order, effectively obviating the need for the scheduled hearing on the request for an injunctive order. Pursuant to the terms of that stipulation, executed by the Court on March 9, 1984, the defendant has agreed "not [to] solicit or contact certain of plaintiff's customers within the territory [of Minnesota, South Dakota, North Dakota, and Iowa] for the purpose of selling or servicing insurance in competition with the plaintiff at any time prior to [April 15, 1985 or until further order of this Court, whichever occurs first]." *Stipulation and Order* at 2 (March 9, 1984). The stipulation further provides that, in the event that the defendant elects to contact, solicit, or service any of the plaintiff's customers, he shall be precluded from doing so until an appropriate hearing is conducted on the merits of the plaintiff's petition for an appropriate injunctive order.

Presently before the Court in this matter is the plaintiff's motion to amend its complaint, filed approximately one week before the parties' stipulation to an injunctive or-

der. Initially invoking Rule 15(a) of the Federal Rules of Civil Procedure, the plaintiff seeks to amend his claim for relief against the named defendant to reflect its contention that this former employee solicited several—and not merely one—of the plaintiff's customers, inducing them to terminate their accounts with the plaintiff and to initiate business relationships with the defendant and his new employer. In addition, by its proposed amended complaint, the plaintiff alleges that the defendant's breach of the non-competition agreement caused it "severe and irreparable commercial harm in the amount of at least $70,-000.00," Plaintiff's *Proposed Amended Complaint* at 4 (April 9, 1984)—not merely "a financial loss in excess of $10,000.00 in lost present and future insurance commissions or fees...." Plaintiff's *Complaint* at 3 (June 10, 1983). As before, however, the principal claims for relief are framed under theories of breach of contract, tortious interference with a contractual relationship, and unjust enrichment; indeed, with the exception of those changes described above, the proposed amended complaint is, with respect to the named defendant, virtually identical to the original.

Significantly, however, the plaintiff also seeks to incorporate a fourth cause of action—this one, against North Star Casualty Services, Inc., the corporation that purportedly employed the individual defendant following his termination with the plaintiff. In particular, the plaintiff charges, in its proposed amended complaint, that North Star Casualty Services, Inc. knowingly "aided, abetted and encouraged defendant Lemberger to violate the terms of his [non-competition] Agreement with plaintiff by contacting and soliciting plaintiff's customers in direct competition with the Agency." Plaintiff's *Proposed Amended Complaint* at 6 (April 9, 1984). Asserting that North Star Casualty Services, Inc., by these actions, tortiously interfered with the plaintiff's business relationship with its customers, unfairly competed against the plaintiff for those customers, and was, accordingly, unjustly enriched at the plaintiff's expense, the supplemental cause of action describes

irreparable losses of business customers and other damages in the amount of at least $70,000.00.

In its supporting memoranda of law, the plaintiff observes that the amended claims against the individual defendant derive from the same transactions upon which the original complaint is premised and, in fact, might properly be treated as amendments to conform the pleadings to the evidence, pursuant to Rule 15(b) of the Federal Rules of Civil Procedure; indeed, the defendant's apparent solicitation of several of the plaintiff's customers was not discovered until the time of his deposition, or so the plaintiff explains. Accordingly, the movant contends that the supplemental charges against the named defendant are not unduly delayed nor motivated by bad faith.

Similarly, the plaintiff argues that the addition of the supplemental claim against North Star Casualty Services, Inc. would not prove prejudicial to the individual defendant by enlarging the scope or increasing the expense of the present litigation; in this context, the movant notes that the several affirmative defenses in the answer already include numerous references to the involvement of North Star Casualty Services, Inc. in the very transactions upon which this action is premised. In fact, it is the plaintiff's position that the principal affirmative defense—that is, that it consented to and approved of the defendant's employment with North Star Casualty Services, Inc.—will virtually necessitate the resolution at trial of issues peculiarly related to the status and actions of this proposed corporate defendant.

Finally, the movant maintains that the inclusion of North Star Casualty Services, Inc. in the litigation of this matter would not unduly delay pretrial proceedings, since discovery as to this party could easily be coupled with that pertaining to the present claims against the individual defendant. In this connection, the movant discounts any inconvenience or prejudice that might result if North Star Casualty Services, Inc. were to interpose affirmative defenses or counterclaims to the cause of action

against it. It also suggests that the trial on the merits, not yet scheduled, might assume a more logical appearance and structure if the interests of this pivotal party were represented. The plaintiff's position is summarized by counsel as follows:

> The proposed amendment would be in the interests of justice because it would bring all of the concerned parties before the Court, without prejudicing any party or delaying this action. To date, the Court has not entered a scheduling order, and this matter has not been set for trial. Therefore, North Star would not be prejudiced by being added as a party defendant at this time, as North Star would have ample opportunity to conduct any necessary discovery. In addition, the joinder of North Star at this time would not delay this action or require postponement of the trial date.

*Affidavit* of Jeffrey P. Clark at 2 (February 28, 1984).

Predictably, the present defendant opposes the plaintiff's request on several grounds. As a threshold matter, he notes that the motion is primarily a request to join a new party and, as such, is properly brought under Rule 21 of the Federal Rules of Civil Procedure, establishing the authority of the Court or any litigant to add or drop parties "at any stage of the action and on such terms as are just." Observing that the present movant has not so styled its petition and that an answer has already been interposed, the defendant concludes that the request should be denied as violative of Local Rule 6.01, requiring that every motion set forth the rule pursuant to which it is made. In the alternative, the defendant suggests that the plaintiff be ordered to interpose a proper motion under Rule 21 and that the parties thereafter be permitted to brief the merits of that new petition.

Notwithstanding its procedural objections to the plaintiff's request, the defendant argues in substantive opposition that it will, indeed, be prejudiced if North Star Casualty Services, Inc. is joined as an additional party-defendant. Raising the specter that new charges of illegal restraint of trade and unfair trade practices might follow on the heels of this corporate party's service, the individual defendant predicts lengthy and extensive discovery proceedings resulting in unnecessary confusion and unjustifiable delay in the ultimate disposition of the parties' claims. In turn, the present defendant would be faced with substantially increased litigation costs incurred principally by vigorous and perhaps repetitive discovery, along with a substantial increase in the length and scope of trial, or so he speculates.

The defendant further suggests that the proposed amendment might well spawn additional amendments, as the two corporate parties—namely, Rollins Burdick Hunter of Wisconsin, Inc. and North Star Casualty Services, Inc.—continue to compete in various markets, potentially encouraging additional damages. Finally, he states his belief that the legal insufficiency of the claim against North Star Casualty Services, Inc. in itself justifies denial of the present motion. Noting that a critical element of any tortious interference claim is the very existence of a contract between the disputing parties, the defendant contends that the "Agreement Not To Compete", appended to the original complaint as Exhibit A, "would never be sufficient to withstand a motion to dismiss a claim of tortious interference with an employment contract." Defendant's *Memorandum in Opposition to Motion to Amend Complaint* at 11 (April 17, 1984). The futility of the proposed cause of action against North Star Casualty Services, Inc. thus constitutes a sufficient basis upon which to deny the plaintiff's motion to amend, or so the defendant concludes. His position is summarized as follows:

> Should the court entertain Plaintiff's motion as properly styled [under Rule 15(a) and not inadequate as a procedural matter for Rule 21 purposes], Plaintiff's motion should still be denied. The addition of another party to this litigation, with that party's anticipated counterclaims against Plaintiff, will, in all likelihood, dramatically enlarge the scope of

this litigation. Defendant Lemberger will be prejudiced by the addition of the new party because that addition will cause litigation expenses to rise substantially, delay the determination of the claims between Plaintiff and Defendant Lemberger, prolong any trial on the merits in this matter, and confuse the issues before the jury. In addition, at least some of the claims which Plaintiff would assert against North Star will, in all likelihood, be subject to a motion to dismiss. For these reasons, Defendant Lemberger respectfully requests the court to deny Plaintiff's motion for leave to amend its Complaint.

Defendant's *Memorandum in Opposition to Motion to Amend Complaint* at 12 (April 17, 1984).

The Court has reviewed the several briefs submitted by the parties in support of and in opposition to the present motion and has, in this undertaking, carefully considered the arguments articulated therein. Based on this analysis, the Court concludes, for the reasons stated below, that the plaintiff should be granted leave to amend its complaint as proposed.

## RULE 15(a), RULE 21, AND THE PLAINTIFF'S MOTION TO AMEND

As both parties to this action recognize, Rule 15(a) of the Federal Rules of Civil Procedure provides that once a responsive pleading is served, "a party may amend its pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The unmistakable purpose of the rule is to assist the disposition of litigation on its merits, rather than permitting the pleadings to become ends in themselves. *Summit Office Park, Inc. v. United States Steel Corporation,* 639 F.2d 1278, 1284 (5th Cir.1981). Among other things, it is meant to provide parties with an opportunity to assert new matters that may not have been known to them at the time they filed their original pleadings. *Johnson v. Helicopter & Airplane Services Corporation,* 389 F.Supp. 509, 513 (D.Md.1974).

At the same time, Rule 21 of the Federal Rules of Civil Procedure establishes that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Although Rule 21 was initially adopted to obviate the harsh results that flowed from the technical, common law rules of nonjoinder and misjoinder, *Halladay v. Verschoor,* 381 F.2d 100, 108 (8th Cir.1967), the rule has long been invoked as a remedial device for the addition of parties where such is appropriate in the interest of justice. *See Curacao Trading Company v. Federal Insurance Company,* 2 F.R.D. 265, 268 (S.D. N.Y.1942) (plaintiff's remedy found in addition of parties to effect complete adjudication of action removed from state court by one defendant only). In this context, it is specifically intended to permit the joinder of a person who, through inadvertence, mistake, or for some other reason, had not been made a party and is later found to be necessary or desirable. *Fair Housing Development Fund Corporation v. Burke,* 55 F.R.D. 414, 419 (E.D.N.Y.1972).

As indicated above, the threshold legal issue presented by the pending motion in this action—namely, whether the plaintiff's request is properly styled under Rule 15(a) or Rule 21—turns centrally on the interrelationship between these two procedural devices. The largely unsettled nature of the law in this area has been described succinctly as follows:

Many of the court decisions to date reflect the view ... that the specific provisions of Rule 21 of the Federal Rules of Civil Procedure govern the general provisions of Rule 15(a) of the Federal Rules of Civil Procedure, and that an amendment changing parties requires leave of court even though made at a time when, under Rule 15(a), amendment might be made as of course. The rationale is that Rule 15(a) refers in general terms to the broad subject of changes in the pleadings, by amendment, while Rule 21 refers in specific terms to changes in the parties to the action, by adding or

dropping some of such parties, and that any conflict or ambiguity which results from a comparison of the two Rules is to be resolved in favor of the specific and against the general, so that when a proposed amendment to a complaint seeks to effect a change in the parties to the action, Rule 21 controls and, to that extent, limits Rule 15(a) [citations omitted].

However, Professor Wright recommends giving preference to Rule 15(a), pointing out that the general-versus-specific explanation is an unsatisfactory one because, arguably, Rule 15 is the more specific Rule since it sets forth a particular means by which a party attempts to add or drop parties—by amendment to his pleadings—as opposed to Rule 21's more general treatment of the overall subject matter of dropping and adding parties (6 Wright and Miller, Federal Practice and Procedure § 1479).... Professor Wright makes the very practical point that the first part of Rule 15(a) contemplates that the court should not have to be concerned with passing on amendments at an early stage when there is little likelihood of prejudice to other parties.

Rydstrom, J.S., *Annotation*, 31 A.L.R.Fed. 752, 754–755 [§ 2a] (1977); *see also* 3 J.W. Moore, *Moore's Federal Practice*, ¶ 15.07 [3] at 15–56—15–57 (1985) ("A conflict may often arise when a pleader seeks to accomplish, by amendment ... pursuant to Rule 15(a), that which is also governed by another federal rule requiring leave of court. This controversy has arisen most often with respect to Rule 21, governing the procedure for adding or dropping parties").

■ While the issue, which most often arises prior to the service of a responsive pleading, is thus plainly a significant one, the Court notes that, for purposes of the present case, the dispute is more apparent than real. Indeed, it has been specifically held that any possible conflicts between the interpretations of Rule 21 and Rule 15(a) arise only when an amending party acts without leave of court under Rule 15(a); otherwise the basic, substantive standard for adding or dropping parties applies to the resolution of a motion whether styled under either rule. *Gibbs v. Titelman*, 369 F.Supp. 38, 53 (E.D.Pa.1973), *rev'd on other grounds*, 502 F.2d 1107 (3rd Cir.), *cert. denied*, 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). In other words, the liberal standards upon which amendments are to be granted when leave of court is required under Rule 15(a) should also guide the trial judge in resolving motions to add parties under Rule 21. *Kaminsky v. Abrams*, 41 F.R.D. 168, 170 (S.D.N.Y.1966); *see also McLellan v. Mississippi Power & Light Company*, 526 F.2d 870, 873 (5th Cir.1976), *modified on rehearing on other grounds*, 545 F.2d 919 (5th Cir.1977) (citing 6 Wright & Miller, *Federal Practice and Procedure* § 1479 at 401–402 (1971)).

■ The Court fully appreciates and understands the defendant's legitimate interest in ensuring that the present motion is styled and argued pursuant to the proper federal rule of procedure; as this party accurately notes, both the letter and spirit of Local Rule 6.01 require nothing less. Furthermore, the plaintiff apparently concedes, in what could accurately be characterized as the second round of briefing on the pending motion, that its request might properly have been brought under Rule 21.

Nonetheless, the Court concludes that no legitimate interest of either of the parties to this action would be disserved if the motion were resolved based on the exhaustive briefs filed to date; in fact, yet another round of briefing would only serve to delay further the ultimate disposition of their important claims. Since, as explained above, the relevant standards for the addition of parties pursuant to Rule 21 parallel those well-established touchstones for requests under Rule 15(a), the Court opines that all issues pertinent to the resolution of this matter are now before it. Accordingly, insofar as the defendant urges denial of the present motion on procedural grounds only, the Court explicitly rejects that party's position.

■ Normally, federal courts favor liberality in permitting amendments to plead-

ings, and when justice so requires, the matter is committed to the trial judge's broad range of discretion. *Hayden v. Ford Motor Company,* 497 F.2d 1292, 1294 (6th Cir.1974). The admonition that leave to amend pleadings should be freely given was most clearly underscored by the United States Supreme Court in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), as follows:

> ... If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the federal rules.

*See also Freeman v. Continental Gin Company,* 381 F.2d 459, 461 (5th Cir.), *rehearing denied,* 384 F.2d 365, 370 (5th Cir.1967) ("circumstances and terms upon which ... leave is to be 'freely given' [are] committed to the informed, careful judgment and discretion of the trial judge as he superintends the development of a cause toward its ultimate disposition").

■ Applying these general standards to the circumstances of the present case, the Court concludes that the motion to amend should be granted in its entirety. In fact, as to the proposed changes to the claims asserted against the present defendant, the Court would surely be guilty of an abuse of discretion if it denied the present request. The plaintiff's significant discovery—namely, that the defendant may have solicited the account of more than one of his former employer's customers—should be reflected in the pleadings upon which the parties' claims will ultimately be resolved. There is nothing in the record to suggest that this portion of the request was unduly delayed or motivated by bad faith, nor is the defendant likely to incur any prejudice if this matter proceeds to trial with this modest change in the scope of the principal cause of action.

The Court views with equal beneficence the proposed amendment to reflect alleged irreparable, commercial harm in the amount of at least $70,000.00. The Court rejects the defendant's characterization of this and the companion proposed amendments as insignificant, thus justifying denial of the motion. A request such as this, by which a party seeks to clarify or make more specific the nature of the damages it allegedly suffered, was surely envisioned by the architects of modern Rule 15(a), and no substantial reason for its denial is reflected in the record as compiled to date.

For similar reasons, the Court concludes that the movant should be permitted to incorporate in its complaint an additional count against North Star Casualty Services, Inc. As underscored by the numerous pleadings, affidavits, memoranda of law, and supporting documents filed to date—including, most especially, those submitted with reference to the plaintiff's previous petition for preliminary injunctive relief—North Star Casualty Services, Inc. was and perhaps continues to be a major player in the transactions that give rise to this lawsuit. The plaintiff alleges that this party was responsible for inducing the individual defendant to terminate his employment and to solicit the business of the plaintiff's now former customers, in violation of the subject non-competition agreement. Although the defendant maintains that the plaintiff specifically authorized North Star Casualty Services, Inc. to negotiate with the present defendant and, in fact, explicitly permitted him to join that corporation's workforce, there is no apparent dispute that North Star Casualty Services, Inc. is, indeed, the

entity around which these opposing tales revolve. The Court feels strongly that the several claims articulated by the present parties cannot be fully and fairly resolved absent the involvement of this corporate player.

As already noted, the present defendant's principal objection to joinder of this additional party is that it will suffer considerable prejudice throughout discovery and trial, since North Star Casualty Services, Inc. may introduce into this litigation significant, complicated antitrust claims that will both increase the cost of the defense and unreasonably confuse the jury. While the Court does not share the defendant's pessimism with respect to the future prosecution and defense of this case, it is willing to speculate that the proposed corporate defendant will, like any person against whom serious charges are brought, defend this action vigorously. That consideration alone, however, does not weigh heavily against the significant benefit likely to accrue to all parties from an exhaustive disposition of their claims in one, consolidated proceeding involving all relevant parties. Here, as always, the interests of justice are paramount.

■ Finally, the Court declines to characterize the substantive cause of action against North Star Casualty Services, Inc. as so meritless on its face as to justify denial of the motion to amend. Although the precise import of the "Agreement Not To Compete" is certain to be hotly disputed by the parties, the Court finds no legal insufficiency in the claim of tortious interference as pled by the plaintiff in its proposed amended complaint. Likewise, the Court identifies nothing in the record to date to indicate that the establishment of a prima facie case of tortious interference is absolutely impossible under the facts of this case. *See Mendelson v. Blatz Brewing Company*, 9 Wis.2d 487, 490, 101 N.W.2d 805, 807 (1960) ("... [A] cause of action is maintainable for a wrongful interference by a third party with an employment relationship terminable at will").

As the Court has already explained, the proposed amended complaint also incorporates claims of unfair competition and unjust enrichment and further charges North Star Casualty Services, Inc. with encouraging the individual defendant to violate the terms of the non-competition agreement. The defendant makes no apparent challenge to the legal sufficiency of these causes of action, and the Court identifies none on its own initiative. Stated simply, the amended claims fall far short of the level of futility necessary for outright rejection.

## CONCLUSION

For the reasons articulated above, the Court hereby GRANTS the plaintiff's motion of February 28, 1984, to amend its complaint, pursuant to Rules 15(a) and 21 of the Federal Rules of Civil Procedure.

In order to ensure that the prosecution and defense of this action now proceed apace, the Court will conduct a status conference at *2:30 p.m., on Thursday, June 6, 1985.* Counsel for the parties are instructed to come to that hearing fully prepared to discuss their expectations for the further litigation of this matter.