William A. KUMPF, Plaintiff-Appellant,

v.

Orin A. STEINHAUS, et al., Defendants-Appellees.

No. 85–1348.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1985.
Decided Dec. 27, 1985.

Brady C. Williams, Madison, Wis., for plaintiff-appellant.

Maurice J. McSweeney, Milwaukee, Wis., for defendants-appellees.

Before EASTERBROOK, Circuit Judge, ESCHBACH, Senior Circuit Judge, and GRANT, Senior District Judge.[*]

EASTERBROOK, Circuit Judge.

From 1973 until August 1983 William A. Kumpf was the president and chief executive officer of Lincoln National Sales Corp. of Wisconsin (Lincoln Wisconsin). He owned 20% of Lincoln Wisconsin's stock. Lincoln National Sales Corp. (Lincoln Sales) owned the other 80% of the stock, and two of the three members of Lincoln Wisconsin's board of directors were employees of Lincoln Sales. Lincoln Sales is in turn a subsidiary of Lincoln National Life Insurance Co. (Lincoln Life). Lincoln Sales is the marketing arm of Lincoln Life; Lincoln Wisconsin was the Wisconsin agency of Lincoln Sales.

In April 1981 Orin A. Steinhaus became an executive vice-president of Lincoln Life, leaving a post as head of Lincoln's sales agency in Columbus, Ohio. The president of Lincoln Life gave Steinhaus and other employees the task of revising the firm's sales structure, which was losing money. Lincoln Life closed 25 sales agencies and decided to consolidate others. In August 1983 Steinhaus decided to consolidate five midwestern sales agencies into a single agency. (Doubtless other officers of Lincoln Life concurred in these decisions, but for simplicity we write as if Steinhaus made all decisions himself.) He instructed Lincoln Sales's directors on the board of Lincoln Wisconsin to approve a merger of Lincoln Wisconsin into Lincoln Chicago Corp. (Lincoln Chicago); Lincoln Wisconsin's board approved the merger by a vote of two to one, over Kumpf's dissent. Lincoln Wisconsin disappeared, and so did Kumpf's job. This litigation is the residue.

The district court dismissed most of Kumpf's claims for relief but sent to the jury a claim that Steinhaus and the Lincoln corporations tortiously interfered with the employment contract between Kumpf and Lincoln Wisconsin. Kumpf was an employee at will, but even at-will employment is contractual and therefore potentially the basis of a tort action. *Mendelson v. Blatz Brewing Co.*, 9 Wis.2d 487, 101 N.W.2d 805 (1960). Kumpf was fired by Lincoln Wisconsin, and Lincoln Wisconsin cannot "interfere" with its own employment relations. But because Lincoln Sales owned only 80% of Lincoln Wisconsin's stock, Kumpf argued that other participants in the Lincoln family of firms could not intervene.

The defendants maintain that their interference with Kumpf's contract was privileged because it took place in the course of business. Kumpf replied that it was not privileged because it was done with an improper motive. After the reorganization, Steinhaus became president of Lincoln Chicago. In the insurance business the head of an agency receives a percentage of the agency's revenue. Income that used to go to Kumpf now went to Steinhaus, and the reorganization increased Steinhaus's total income. Kumpf argued that Steinhaus engineered the reorganization to advance his personal interests, and that this defeats the claim of privilege.

Kumpf asked the judge to instruct the jury that if the defendants' acts were "based—even in part—upon personal considerations, malice or ill will" then their acts were not privileged. Kumpf later proposed an instruction that would make privilege turn on "predominant" motivation. The district court, however, told the jury that "if you find that the actions of the defendants were motivated solely by a desire for revenge, ill will or malice, or in the case of the defendant Orin Steinhaus, solely by personal considerations, then you may find their actions improper." The jury returned a verdict for the defendants, and

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

Kumpf attacks the "sole motive" instruction.

The Supreme Court of Wisconsin has dealt twice with related questions of privilege, and its position on whether mixed proper and improper motives defeat the privilege is unclear. *Mendelson,* the first case, quoted with apparent favor from a federal decision adopting the rule that any legitimate motive will support the privilege. 101 N.W.2d at 808, quoting from *Tye v. Finkelstein,* 160 F.Supp. 666, 668 (D.Mass. 1958). But it also described, with apparently equal favor, an earlier decision said to establish that "malice is supplied when the act of procuring the discharge is done with *an* improper motive." *Id.* (emphasis added), citing *Johnson v. Aetna Life Insurance Co.,* 158 Wis. 56, 147 N.W. 32 (1914). The most recent case says that it is sufficient "to allege that the act of procuring a breach of contract was done with *an* improper motive." *Lorenz v. Dreske,* 62 Wis.2d 273, 287, 214 N.W.2d 753 (1974) (emphasis added). Kumpf has asked us to certify to the Supreme Court of Wisconsin the question whether mixed proper and improper motives undercut the privilege. If we thought the case turned on this, certification would be an attractive route. But the case does not turn on this.

Malice, ill will, and the like mean, in Wisconsin, an intent to act without justification. *Mendelson, supra,* 101 N.W.2d at 808. So the initial question is whether Kumpf has identified an unsupportable consideration that led to his dismissal. The only one Kumpf presses on us is Steinhaus's self-interest (Kumpf calls it "greed"). The defendants asked the district court to dismiss the case at the close of Kumpf's evidence on the ground that Steinhaus's financial motivations were proper, and therefore the acts were privileged. The district judge allowed the jury to render a decision. When denying Kumpf's motion for a new trial, however, the judge remarked that "even had the predominant instruction been granted, ... the jury would have had no other alternative than to find for the defendant." This is a ground on which we may affirm the

judgment, see *Massachusetts Mutual Life Insurance Co. v. Ludwig,* 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976), and we think the defendants have a compelling argument.

The basis of the privilege in question is the economic relations among the Lincoln family of corporations. The managers of the firm at the apex of the structure have an obligation to manage the whole structure in the interests of investors. Kumpf and Lincoln Wisconsin knew that when they started—when Kumpf took the risks associated with owning 20% of the stock, and holding one of three seats on the board, in a subsidiary of Lincoln Life. The superior managers in such a structure try to serve the interests of investors and other participants as a whole, and these interests will not always be congruent with the interests of managers of subsidiaries. Corporate reorganizations may reduce the costs of operation and put the structure in the hands of better managers, though this may be costly to existing managers.

If Kumpf had directly challenged the wisdom of a business decision of the managers of Lincoln Life, he would have been rebuffed with a reference to the business judgment doctrine—a rule of law that insulates business decisions from most forms of review. Courts recognize that managers have both better information and better incentives than they. The press of market forces—managers at Lincoln Life must continually attract new employees and capital, which they cannot do if they exploit existing participants or perform poorly—will more effectively serve the interests of all participants than will an error-prone judicial process. See *Joy v. North,* 692 F.2d 880, 885–87 (2d Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *Aronson v. Lewis,* 473 A.2d 805, 812–15 (Del.1984); Daniel R. Fischel, *The Business Judgment Rule and the Trans-Union Case,* 40 Bus.Law. 1437, 1439–43 (1985).

The privilege to manage corporate affairs is reinforced by the rationale of em-

ployment at will. Kumpf had no tenure of office. The lack of job security gave him a keen motive to do well. Security of position may diminish that incentive. See Richard A. Epstein, *In Defense of the Contract at Will*, 51 U.Chi.L.Rev. 947 (1984). Employment at will, like the business judgment doctrine, also keeps debates about business matters out of the hands of courts. People who enter a contract without a fixed term know there is some prospect that their business partners may try to take advantage of them or simply make a blunder in deciding whether to continue the relationship. Yet people's concern for their reputation and their ability to make other advantageous contracts in the future leads them to try to avoid both mistakes and opportunistic conduct. Contracting parties may sensibly decide that it is better to tolerate the risk of error—to leave correction to private arrangements—than to create a contractual right to stay in office in the absence of a "good" reason. The reason for a business decision may be hard to prove, and the costs of proof plus the risk of mistaken findings of breach may reduce the productivity of the employment relation.

Many people have concluded otherwise; contracts terminable only for cause are common. But in Wisconsin, courts enforce whichever solution the parties select. A contract at will may be terminated for any reason (including bad faith) or no reason, without judicial review; the only exception is a termination that violates "a fundamental and well-defined public policy as evidenced by existing law." *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834, 840 (1983). Cf. *Ferraro v. Koelsch*, 124 Wis.2d 154, 368 N.W.2d 666 (1985) (terms of employee handbooks may be enforced if they modify at-will employment, and the question is what the full contract entails). Greed—the motive Kumpf attributes to Steinhaus—does not violate a "fundamental and well-defined public policy" of Wisconsin. Greed is the foundation of much economic activity, and Adam Smith told us that each person's pursuit of his own interests drives the economic system to produce more and better goods and services for all. "It is not from the benevolence of the butcher, the brewer, or the baker, that we expect our dinner, but from their regard to their own interest. We address ourselves, not to their humanity but to their self-love, and never talk to them of our own necessities but of their advantages." *The Wealth of Nations* 14 (1776; Modern Library ed.).

The reasons that led Wisconsin to hold in *Brockmeyer* that it is "unnecessary and unwarranted for the courts to become arbiters of any termination that may have a tinge of bad faith attached" (335 N.W.2d at 838) also establish that greed is not the sort of prohibited motive that will support Kumpf's tort action. In *Mendelson* the court stated that majority shareholders possess a privilege "to take whatever action they deem[ ] advisable to further the interests of the corporation." 101 N.W.2d at 808. The court then quoted with approval from a text stating that a person enjoys no privilege "if his object is to put pressure upon the plaintiff and coerce him into complying with the defendant's wishes in some collateral matter."

If Steinhaus got rid of Kumpf because Kumpf would not marry Steinhaus's daughter, that would have been pressure in a "collateral matter." It is quite another thing to say that a jury must determine whether Steinhaus installed himself as head of Lincoln Chicago "predominantly" because he thought that would be good for Lincoln Life or "predominantly" because Steinhaus would enjoy the extra income. The decision to consolidate agencies and change managers is not "collateral" to the business of Lincoln Life, and the rationale of the business judgment rule interdicts any attempt to look behind the decision to determine whether Steinhaus is an astute manager.

Often corporations choose to align the interests of investors and managers by giving the managers a share of the firm's revenue or profits. Commissions, the ownership of stock or options, and bonuses all make managers and investors do well or

poorly together. Lincoln Life chose to give managers a financial stake in each agency's revenues. Steinhaus was privileged to act with that incentive in mind. Suppose a major auto manufacturer decides to pay its chief executive officer $1 per year plus a percentage of the firm's profit. The officer then closes an unprofitable subsidiary (owned 80% by the firm), discharging its employees. Under Kumpf's theory any of the employees would be entitled to recover from the executive if the jury should estimate that in the executive's mind making money for himself predominated over making money for the firm. Yet since the two are the same thing, that would be a bootless investigation, and one with great potential to stifle the executive's vigorous pursuit of the firm's best interests. We do not think this is the law in Wisconsin or anywhere else.

Kumpf presents one last argument. He asked the judge to charge the jury that it should consider "recognized ethical codes or standards for a particular area of business activity" and "concepts of fair play" in deciding whether the defendants' acts were privileged. This "business ethics" instruction, Kumpf contends, would have allowed the jury to supplement the rules of tort and contract with " 'the rules of the game' " in business. Although language of this sort appears in the *Restatement (Second) of Torts* § 767 comment j at p. 37 (1979), it was not designed to be given to a jury. It would leave the jury at sea, free to impose a brand of ethics for which people may not have bargained. No case in Wisconsin has required an instruction even remotely like this one. Cf. *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257 (2d Cir. 1984) (no moral obligation of contract arises in advance of the closing).

The "rules of the game" are important in deciding what sorts of acts are privileged. If Lincoln Life had assured Kumpf that his agency would not be obliterated without his being given an opportunity to take a new job within the firm, that might cast a different light on his claim for interference with contract. But Kumpf does not say that he received such assurance or that any other understood "rule" has been breached. He therefore had to be content with the rules reflected in the definition of privileged acts.

The contention that businesses should be more considerate of their officers should be addressed to the businesses and to legislatures. Some firms will develop reputations for kind treatment of executives, some will be ruthless. Some will seek to treat executives well but find that the exigencies of competition frustrate their plans. The rule of *this* game is that Kumpf was an employee at will and had no right to stay on if his board wanted him gone. His board was dominated by people who answered to Lincoln Sales, which answered to Lincoln Life. Kumpf did not bargain for legal rights against Lincoln Life, and the judge properly declined to allow the jury to convert moral and ethical claims into legal duties.

AFFIRMED.