850 F.2d 297
 57 USLW 2066, 11 Fed.R.Serv.3d 823
 Chester H. BOROWSKI, Plaintiff-Appellant,
v.
DePUY, INC., A DIVISION OF BOEHRINGER MANNHEIM CO., and
Stephen Bales, Defendants-Appellees.
Chester H. BOROWSKI, Plaintiff,
v.
DePUY, INC., A DIVISION OF BOEHRINGER MANNHEIM CO., and
Stephen Bales, Defendants-Appellees.
Appeal of MITCHELL A. KRAMER & ASSOCIATES.
 Nos. 87-3059, 88-1057.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 18, 1988.
Decided June 17, 1988.
 
 Mitchell A. Kramer, Mitchell A. Kramer & Assoc., Philadelphia, Pa., for plaintiff-appellant.
 Donald E. Knebel, Barnes & Thornburg, Indianapolis, Ind., for defendants-appellees.
 Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 The record in this egregious case of misleading and unprofessional attorney behavior compelled the district court to adopt the magistrate's report recommending that summary judgment be granted for both defendants on all of plaintiff's counts. The district court modified the report so that costs and attorney's fees were to be borne exclusively by plaintiff's lead counsel, Mitchell A. Kramer, with no right to reimbursement from the plaintiff. We affirm, and because plaintiff's counsel misstated and misrepresented the record below, we further award both defendants their respective costs and attorney's fees for having to defend this vexatious and frivolous appeal. Fed.R.App.P. 38.
 
 
 2
 This diversity contract and tort suit is governed by the law of Illinois which was the state of performance of contract obligations as well as the state of the most significant contact between the parties and the state where the claimed injury occurred. Because it arises on appeal of summary judgment for defendants, we review the inferences from the following facts in the light most favorable to the plaintiff, Chester A. Borowski. Int'l Union of Operating Engineers v. Assoc. General Contractors of Illinois, 845 F.2d 704 (7th Cir.1988). On May 8, 1986, Borowski filed a four-count complaint against defendants DePuy, Inc., and Stephen Bales. Counts I and II were against DePuy and Bales for alleged breach of an implied contract, and Counts III and IV were against Bales only and charged tortious interference with contractual relations against Borowski. DePuy, a division of Boehringer Mannheim Corporation, markets medical healthcare products throughout the country. Bales was a former national sales manager for DePuy. Borowski was DePuy's sales representative for an area around Cook County, Illinois, known as Territory 31.
 
 
 3
 Pursuant to an oral contract of unspecified duration in August 1977, Borowski began selling DePuy products, to be paid on a commission of approximately 17.5% of his sales. When he assumed his position with DePuy, Borowski bought certain instruments from Mr. Higby, his predecessor in the territory, at a cost less than if he had purchased them from DePuy.
 
 
 4
 Bales, as national sales manager, was in charge of hiring, reviewing, and firing distributors. In 1979, managerial problems involving Borowski's relationship with his sales associates and his performance as the Territory 31 distributor came to Bales' attention. Bales wrote Borowski to tell him to improve his distribution through an in-depth marketing and sales plan. Plaintiff promised to attempt to remedy both the low sales level and the associates' morale problem.
 
 
 5
 By the summer of 1984, the continuing problems reached a critical stage, which despite Borowski's implemented solutions, worsened in 1985. In that year, three local sales associates sent Bales a letter describing Borowski's mismanagement. As a result of his independent review, Bales fired Borowski on August 13, 1985 for failing to rectify the situation. DePuy approved this discharge as well as Bales' request to succeed Borowski as the distributor of Territory 31. After taking an inventory of the goods and merchandise belonging to DePuy in Borowski's possession on August 23, 1985, DePuy withheld his final sales commission check, pending resolution of Borowski's inventory shortage.
 
 
 6
 Borowski's suit alleged the following: 1) DePuy and Bales breached an implied contract when DePuy fired him without paying him an "override" to compensate him for growth in his territory, thereby resulting in defendants' unjust enrichment; 2) DePuy breached an implied contract both to repurchase DePuy's used equipment at 100% of original price as well as to pay him his withheld sales commission; 3) Bales tortiously interfered with his contractual relationship with DePuy by firing him as sales representative; and 4) Bales tortiously interfered with his contractual relationship with the three local sales associates. DePuy counterclaimed for the cost of inventory still in Borowski's possession.
 
 
 7
 On defendants' motions for summary judgment, the magistrate recommended that the motions be granted and that attorney's fees and costs be awarded to defendants pursuant to Rule 11, Fed.R.Civ.P. After a de novo review pursuant to Rule 72, Fed.R.Civ.P., the district court adopted this report but further directed that all of the sanctions be borne solely by Borowski's lead counsel, Mitchell A. Kramer. As recommended by the magistrate, the court also entered judgment of $2,882.73 in favor of DePuy on its counterclaim.
 
 
 8
 After a timely appeal, plaintiff on March 25, 1988, filed a motion in this Court seeking to supplement the record on appeal by including two documents entitled "Motion to Compel and for Sanctions of Defendant Bales" and "Memorandum of Law in Support of Plaintiff's Motion to Compel Defendant Bales to Answer Certain Deposition Questions And To Reconsider Its Denial of Access on the Document Produced In Camera." The motion also requested leave to file a "Supplemental Appendix"[1] which was already attached to plaintiff's reply brief in this Court and which was in addition to a "Supplementary Appendix" previously filed here. At oral argument on April 18, 1988, Mitchell A. Kramer, plaintiff's counsel, stated to this Court that these documents were filed in the district court. This was disputed by both defendants' counsel in his response although the documents were apparently before the magistrate. Kramer chose not to make a rebuttal argument when offered by the Court, saying, "I did not reserve a rebuttal.... I think I've covered pretty well ... and the record I think is fairly clear." Therefore, there was no contradiction of defense counsel's assertion.
 
 
 9
 The arguments raised by plaintiff in his brief to this Court basically rehash those presented to the court below and deserve the summary treatment which follows. We discuss these unsupportable claims before analyzing the propriety of sanctions both below and on appeal.[2]
 
 Breach of Implied Contract
 
 10
 In the district court, Borowski alleged that DePuy and Bales breached an implied contract by failing to pay him compensation known as an "override"--a payment to a former distributor based on a percentage of sales--for development of his territory at the time of his termination, and as a result, that the defendants were unjustly enriched by this action. Plaintiff further asserted that the termination of the contract was made in bad faith and without cause, thereby constituting a breach of the oral at will contract by DePuy and Bales. Next, Count II of the complaint alleged that DePuy breached an implied agreement with Borowski to pay him 100% of the value of the instruments purchased from DePuy and sold to Borowski's customers. A contract implied in law allegedly existed due to the conduct of the parties, the custom and practice of the orthopedic products industry, and DePuy's practice with respect to other terminated distributors. As in Count I, Borowski's theory was predicated on unjust enrichment or quantum meruit principles.
 
 
 11
 Borowski's brief on the implied contract claim both misstates the record and rulings below and attempts to raise previously unmentioned issues. He initially fails to confront the well-known bar to his suit: in Illinois indefinite agreements between companies and their sales representatives can be terminated at will, for any or no reason, without liability. See Gordon v. Matthew Bender & Co., Inc., 562 F.Supp. 1286 (N.D.Ill.1983) (relying on Illinois law); see generally Epstein, In Defense of the Contract at Will, 51 U.Chi.L.Rev. 947 (1984). At oral argument, this Court directed plaintiff's counsel's attention to Kumpf v. Steinhaus, 779 F.2d 1323 (7th Cir.1985), where in construing the similar Wisconsin law, we discussed the rationale behind employment at will. Like Borowski,
 
 
 12
 Kumpf had no tenure of office. The lack of job security gave him a keen motive to do well. Security of position may diminish that incentive.... Employment at will, like the business judgment doctrine, also keeps debates about business matters out of the hands of courts. People who enter a contract without a fixed term know there is some prospect that their business partners may try to take advantage of them or simply make a blunder in deciding whether to continue the relationship. Yet people's concern for their reputation and their ability to make other advantageous contracts in the future leads them to try to avoid both mistakes and opportunistic conduct. Contracting parties may sensibly decide that it is better to tolerate the risk of error--to leave correction to private arrangements--than to create a contractual right to stay in office in the absence of a "good" reason. The reason for a business decision may be hard to prove, and the costs of proof plus the risk of mistaken findings of breach may reduce the productivity of the employment relation.
 
 
 13
 Kumpf, 779 F.2d at 1326. Plaintiff's counsel's only response to the above policy was his concession that Borowski could be fired without cause! He then attempted to restate that his ground for appeal was not for wrongful discharge but for unjust enrichment, and therefore that is this Court's concern.
 
 
 14
 As noted by the magistrate, under Illinois law, "[A] contract implied in law, also referred to as a quasi-contract ... exists from an implication of law that arises from the facts and circumstances, independent of an agreement or consent of the parties. Where there is an obligation or duty and a receipt of a benefit related to such duty, the law may imply from the circumstances or the relation of the parties a promise to pay." Arthur Rubloff & Co. v. Drovers National Bank of Chicago, 80 Ill.App.3d 867, 875, 36 Ill.Dec. 194, 400 N.E.2d 614 (1st Dist.1980). Initially, this Court determines that there was no such relationship alleged between Bales and Borowski; plaintiff thus failed to discharge his burden that he should have received payment from Bales for furnishing services. See Camion v. Tennes, 93 Ill.App.3d 597, 603, 49 Ill.Dec. 58, 417 N.E.2d 748 (1st Dist.1981).
 
 
 15
 In terms of DePuy's liability, when Borowski bargained with the company over the terms of his compensation, no override was ever discussed. An action in quasi-contract does not exist in Illinois just because a specific subject matter is not covered in the express contract. Industrial Lift Truck Service Corp. v. Mitsubishi International Corp., 104 Ill.App.3d 357, 60 Ill.Dec. 100, 432 N.E.2d 999 (1st Dist.1982). As this Court has previously held, "Under Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1011 (7th Cir.1985). The district court in this case relied on Gordon v. Matthew Bender & Co., 562 F.Supp. 1286 (N.D.Ill.1983), a case remarkably not discussed by Borowski until his reply brief. In Gordon, a factually similar case, the court rejected the plaintiff's quasi-contract claim, holding that "If the parties enter into an agreement, they choose to be bound by its terms. The failure to provide for other terms may be intentional, or may be due to oversight. But in any case ... [a]n action sounding in quasi-contract will not lie." 562 F.Supp. at 1298. We agree and sustain the magistrate's conclusion that "such is the case at bar" regarding the purported override.
 
 
 16
 Borowski tried to overcome this conclusion by asserting that DePuy had a uniform policy of paying overrides to terminated distributors. As in the district court and in briefs to this Court, plaintiff's counsel at oral argument again misrepresented the testimony of Richard Nikolaev, the former sales manager of DePuy. Plaintiff claimed that Nikolaev testified that the payment of overrides was a long and well-accepted custom in DePuy's business. But this characterization is patently false. Nikolaev testified that "an override is when someone who works for a distributor pays a portion of his commission to a distributor, or when a distributor retires, and gets a percentage of the sales in the territory." When asked "was it the general practice of DePuy to pay departing distributors an override," Nikolaev replied "No." Nikolaev further stated that DePuy sales representatives often were terminated without receiving an override and that he "did not know" whether any DePuy sales representatives or distributors retired without receiving an override, or whether DePuy itself ever paid an override to a retiring or terminated representative. (Defendants' Br. 27).
 
 
 17
 Borowski's contention that DePuy breached an implied agreement with him to pay him 100% of the value of the instruments purchased from DePuy and sold to Borowski's customers is equally meritless. For support, Borowski mischaracterizes the deposition testimony of Robert Purcell, DePuy's sales director, who supposedly stated that it was the company's policy to pay departing distributors the cost of their used instruments. Purcell did not testify to that assertion even under the most liberal interpretation of his response.[3]
 
 
 18
 Now on appeal, Borowski tries to muster this testimony to his advantage by claiming that the district court erred by not allowing him to amend his claim that he was entitled to less than full value for his instruments and equipment. Yet the district court could not be accused of abusing its discretion in denying leave to amend a complaint when such leave was never sought in the first place by Borowski. Carl Sandburg Village Condominium Ass'n v. First Condominium Dev. Co., 758 F.2d 203, 206 n. 1 (7th Cir.1985).
 
 
 19
 Tortious Interference with Contractual Relationship
 
 
 20
 In the district court, Borowski first contended that Bales interfered with his contractual relationship with DePuy. Bales allegedly misrepresented Borowski's sales volume and nature of his business in order to induce DePuy to terminate and breach its contract with Borowski. Second, plaintiff claimed that Bales interfered with the contractual relations between Borowski and his three sales associates by entering into agreements with them while they were still in Borowski's employ and thus inducing them to violate their duty of loyalty to Borowski. Plaintiff relied on his belief that Bales was negotiating with the sales associates, a belief based on the correspondence and meetings referred to previously which, according to Borowski, were not customary in the orthopedic products industry and constituted a violation of the usual chain of command. To establish this claim, Borowski needed to prove each of the five elements required under Illinois law. Belden Corp. v. Internorth, Inc., 90 Ill.App.3d 547, 45 Ill.Dec. 765, 413 N.E.2d 98 (1st Dist.1980). He needed to show: (1) the existence of a valid and enforceable contract between himself and DePuy; (2) Bales' awareness of that contract; (3) Bales' intentional and unjustified inducement of a breach of that contract; (4) a subsequent breach by DePuy, caused by Bales' wrongful conduct; and (5) damages. Id. at 551, 45 Ill.Dec.2d at 768, 413 N.E.2d at 101.
 
 
 21
 In dismissing this claim, the district court focused on the third element and relied on Worrick v. Flora, 133 Ill.App.2d 755, 758, 272 N.E.2d 708, 711 (3d Dist.1971), which held that corporate employees such as Bales are privileged and cannot be held liable for tortiously interfering with a contract of their employer as long as they are "in accord with [the employee's] usual and customary duties on behalf of the corporation." This Court recognized such a qualified privilege in George A. Fuller Co. v. College of Osteopathic Medicine, 719 F.2d 1326 (7th Cir.1983), where we held that in order for corporate employees to discharge their duties effectively, "their freedom of action aimed toward corporate benefit should not be curtailed by fear of personal liability." Id. at 1333 (quoting Avins, Liability for Inducing A Corporation to Breach its Contract, 43 Cornell L.Q. 55, 59 (1957)).
 
 
 22
 For Bales to lose this qualified immunity from suit, Borowski had to prove that Bales induced the contract's termination both for his own gain and contrary to DePuy's best interests. Worrick, 133 Ill.App.2d at 758, 272 N.E.2d at 711; Fuller, 719 F.2d at 1333. The court below held that Borowski failed to sustain his burden, and the record of plaintiff's managerial problems supports this conclusion. After Borowski was told several times to remedy his poor performance, Bales met with Michael McCaffrey, DePuy's vice president for marketing and sales, before it was decided to fire Borowski.
 
 
 23
 Plaintiff, however, challenges the district court's conclusion that there were no genuine or material issues of disputed fact on this claim. All of his grounds are either irrelevant or based on conjecture. Moreover, his final assertion that Bales was forced to leave Indiana because he was having an affair with the wife of another DePuy employee completely miscasts the testimony of McCaffrey who never responded to a question on the issue.[4]
 
 
 24
 There was neither the factual background nor the legal support for this claim. We thus affirm the court's holding that Bales' action in terminating Borowski was justified in light of the facts presented to the court below.
 
 
 25
 Borowski also contended that Bales interfered with the contractual relations between Borowski and his sales associates by entering into agreements with them while they were under Borowski's supervision and subsequently inducing them to violate their alleged duty of loyalty to him. The plaintiff failed to offer any factual support for these assertions and merely relied on his belief that Bales was negotiating with his associates.
 
 
 26
 Yet, as with the claim that Bales interfered with plaintiff's contract with DePuy, Bales properly raises the defense that it was his responsibility to correspond with the sales associates regarding the problems that occurred within his territory. Thus any negotiations with the associates to remedy the perceived deficiencies would be part and parcel of Bales' usual and customary duties on behalf of the corporation. Worrick v. Flora, 133 Ill.App.2d at 758, 272 N.E.2d at 711. This evidence negates the intent element under Belden Corp., supra, and accordingly leads us to sustain the district court's conclusion that Borowski failed to establish an issue for tortious interference with a contract by Bales.
 
 DePuy's Counterclaim
 
 27
 In Count II, Borowski alleged that DePuy withheld outstanding sales commissions of $21,646.43 due him on sales consummated during his tenure with the company. DePuy counterclaimed that there remained an inventory shortage of instruments on consignment to Borowski worth $24,259.16 which DePuy was entitled to set off against the commission checks it owed Borowski. The district court granted judgment for DePuy of $2,882.73, which was the difference sought in DePuy's counterclaim and the commissions allegedly owed Borowski. On appeal, Borowski asserts that summary judgment here was improper, quoting the magistrate's statement that "[t]he pleadings and memoranda on this issue are murky at best" (Br. 38). He also reiterates his earlier dispute regarding the figures presented by DePuy, without specifying with clarity the amount of commissions due him or presenting any factual evidence as to the accuracy of DePuy's numbers. However, these conclusory allegations without support on appeal fail to persuade this Court that DePuy was not entitled to judgment for the value of unreturned goods it delivered to Borowski. See, e.g., Winfield Design Assoc. v. Quincy Jefferson Venture, 581 F.Supp. 21, 23 (N.D.Ill.1984) (recovery for inventory held on consignment).
 
 Rule 11 Sanctions
 
 28
 This Court applies two different standards of review to a district court's award of sanctions under Rule 11 of the Federal Rules of Civil Procedure. We may reverse the district court's resolution of factual issues underlying the award only if its findings are clearly erroneous. Flip Side Productions v. Jam Productions, 843 F.2d 1024 (7th Cir.1988). Whether the decision to award sanctions was appropriate under the factual background of the case is subject to review for abuse of discretion, R.K. Harp Investment Corp. v. McQuade, 825 F.2d 1101, 1103 (7th Cir.1987), and "the decision whether there has been a [Rule 11] violation is a judgment call." Matter of Central Ice Cream Co., 836 F.2d 1068, 1072 (7th Cir.1988). When reviewing for abuse of discretion we keep in mind that "because the trial court alone has an intimate familiarity with the relevant proceedings," it is in a far superior position to pass on an attorney's conduct than a reviewing court. Ordower v. Feldman, 826 F.2d 1569, 1574 (7th Cir.1987).
 
 
 29
 After granting summary judgment to defendants, the district court on November 16, 1987 made the following findings (App. A4):
 
 
 30
 The documents under seal establish that Borowski's counsel conducted a factual investigation sufficient to satisfy Rule 11. Nonetheless, these documents do not excuse counsel's filing of claims that have no legal foundation. In attempting to justify these claims, Borowski's attorneys have displayed a glaring ignorance of Illinois law. They assert that Kraftco Corp. v. Kolbus, 1 Ill.App.3d 635, 274 N.E.2d 153 (1971)--a case involving a distributorship agreement much like the Borowski-DePuy contract--makes no reference to contracts terminable at will. If they had only read the case, Borowski's lawyers would have discovered that a distributorship agreement of indefinite duration is an at-will contract under Illinois law, regardless of whether or not Borowski was a DePuy employee. See id. at 640, 274 N.E.2d at 156. As for Borowski's quasi-contract claim, a cursory review of Illinois law would have revealed that the claim was meritless. A party cannot seek compensation on a quasi-contract theory when a contract between the parties governs the general issue of compensation. Gordon v. Matthew Bender & Co., Inc., 562 F.Supp. 1286 (N.D.Ill.1983). Because Borowski's claims find no support in existing law, this court agrees with the Magistrate that Borowski's counsel should face Rule 11 sanctions.
 
 The court further stated (App. A2):
 
 31
 After reviewing this matter de novo pursuant to Fed.R.Civ.P. 72(b), this court adopts the magistrate's amended report and recommendation, with one additional modification: Rule 11 sanctions are imposed solely on plaintiff Chester Borowski's lead counsel with no right to reimbursement from Borowski, "absent a showing that would justify sanctioning the client for the choice of legal arguments advanced on his behalf." Zick v. Verson Allsteel Press Co., 623 F.Supp. 927, 933 (N.D.Ill.1985).
 
 
 32
 Borowski's counsel has presented no arguments to this Court to challenge the above conclusions. His conduct throughout the entire case demonstrated the "ostrich-like tactic of pretending that potentially dispositive authority against [his] contention does not exist," precisely the type of behavior that would justify imposing Rule 11 sanctions. Szabo Food Service v. Canteen Corp., 823 F.2d 1073, 1081 (7th Cir.1987). Counsel's reliance on Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir.1987) to rationalize his performance as a good faith effort to challenge existing law is to no avail. He did not even mention the Gordon case, which provided the existing law governing his unjust enrichment claim. He misstated Illinois law applying only to franchise terminations. And he finally failed to provide a factual predicate to support his tortious interference claim. The district court was correct in sanctioning plaintiff, who should not be permitted to rely on the defendants to do the research either to make his case or expose its fallacies. Frantz v. United States Powerlifting Federation, 836 F.2d 1063, 1064 (7th Cir.1987).
 
 
 33
 Courts seek to allocate sanctions between the attorney and the client according to their relative responsibility for the Rule 11 violation. See Chevron, U.S.A., Inc. v. Hand, 763 F.2d 1184, 1187 (10th Cir.1985); Bastien v. R. Rowland & Co., 116 F.R.D. 619, 621-22 (E.D.Mo.1987); Eastway Constr. Corp. v. City of New York, 637 F.Supp. 558, 569 (E.D.N.Y.1986). Moreover, courts generally impose sanctions entirely on counsel when the attorney has failed to research the law or is responsible for sharp practice. See Ruben v. Warren City Schools, 825 F.2d 977, 986 (6th Cir.1987) (court reversed sanctions imposed on plaintiff for her bad faith in filing a suit, explaining that if any fault existed, it lay with the attorneys); Quiros v. Colon, 800 F.2d 1, 2-3 (1st Cir.1986). The rationale behind this is that the attorney and not the client should bear the sanction for filing papers which violate Rule 11 by being unsupported by existing law, or as an attempt to modify well-settled law. Wold v. Minerals Engineering Co., 575 F.Supp. 166, 167 (D.Colo.1983). In such cases, as in the court below, courts often order that the client shall not reimburse counsel for the amount of the sanction. See Golden Eagle Distrib. Corp. v. Burroughs Corp., 103 F.R.D. 124, 129 (N.D.Cal.1984), reversed on other grounds, 801 F.2d 1531 (9th Cir.1986). Mr. Kramer, attorney for Borowski, has failed to demonstrate why we should sanction the plaintiff for the choice of legal arguments advanced on his behalf. Consequently we affirm the lower court's holding regarding allocation of costs and fees.
 
 Sanctions on Appeals
 
 34
 Both Bales and DePuy have requested sanctions on appeal for having to defend the grant of summary judgment against Borowski and for having to respond to Kramer's appeal regarding his Rule 11 violations. This Court's recent decision in Ordower v. Feldman, 826 F.2d 1569 (1987), provides some enlightenment on the interaction between Rule 11 (discussed above) and Rule 38, Fed.R.App.P., which permits us to award just damages and single or double costs to the appellee if an appeal is frivolous. While we are troubled by the frequency with which lawyers before this Court, whether representing appellants or appellees, are including in their briefs groundless requests for Rule 38 sanctions, Meeks v. Jewel Companies, Inc., 845 F.2d 1421 (7th Cir.1988), plaintiff's plainly frivolous appeal emphasized by counsel's flagrant misrepresentation of the record in a thoroughly misleading and unprofessional fashion, see Kawitt v. United States, 842 F.2d 951, 954, 955 (7th Cir.1988), marks this as an appropriate case for an award of costs and fees to both defendants.
 
 
 35
 As noted, Borowski's appellate brief fails to cite Gordon, which the district court properly held dispositive on his unjust enrichment claims. Plaintiff waited until his reply brief where he stated that "It is clear from the context of the reference to the case in Borowski's brief at 30 that greater discussion of Gordon was inadvertently removed in the editing process" (Reply Br. 3). Borowski also restated his meritless tortious interference with contractual relations claims against Bales in light of the countervailing authorities of Worrick and Belden Corp. discussed supra. That Borowski inadequately appealed a frivolous case, however, is not the only matter that disturbs this Court. The entire manner in which Borowski's appeal has been pursued justifies sanctions. His briefs in this Court are replete with misstatements and misrepresentations of the record further demonstrating frivolousness. See Medina v. Chase Manhattan Bank, N.A., 737 F.2d 140, 145 (1st Cir.1984).
 
 
 36
 This Court has assessed sanctions for misleading assertions on appeal. See In re Kelly, 808 F.2d 549, 551 (7th Cir.1986); Thornton v. Wahl, 787 F.2d 1151, 1153 (7th Cir.1986), certiorari denied, 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116. While Rule 11 does not apply directly to proceedings in this court, it does provide guidance in interpreting the rules that do control proceedings before us. Hill v. Norfolk and W. Ry. Co., 814 F.2d 1192, 1200 (7th Cir.1987). Those guidelines counsel us to award appellate sanctions for Borowski's misstatements, for the misconduct below and here indicates the bad faith in prosecuting this frivolous appeal. Hal Commodity Cycles Management Co. v. Kirsh, 825 F.2d 1136 (7th Cir.1987). One example of this is the persistent allegation that Bales was forced to leave Indiana because of sexual improprieties. Borowski's counsel supported this claim by manufacturing McCaffrey's deposition testimony (Br. 17); see supra at p. 303 n. 4.
 
 
 37
 Plaintiff counsel's most egregious deceit, however, was found in his motion to supplement the record on appeal. Defendants had opposed the motion on the ground that these documents had never been presented to Judge Bua. At oral argument when asked if the purported documents and deposition testimony were ever docketed in or presented to the district court, Mr. Kramer said they were filed but never docketed. He then admitted that he "goofed": when preparing the record, he did not realize that the items were not part of the district court record until his appeal. The frivolousness of the appeal is reflected in the failure to admit this frankly in his motion to supplement, which justifies sanctions on appeal.[5] Kawitt, 842 F.2d at 954, 955 (Cudahy, J., concurring).
 
 
 38
 We affirm the district court's grants of summary judgment to DePuy and Bales and its imposition of Rule 11 sanctions to be borne exclusively by plaintiff's attorney Mitchell A. Kramer. We also award both defendants their costs and attorney's fees incurred in litigating these frivolous appeals, to be paid by Borowski and his counsel with respect to each appeal. Therefore, as to the two appeals we order DePuy and Bales to submit to the clerk of this Court within fifteen (15) days a verified bill of costs and fees, whose payment will be split between Borowski and his counsel.[6]
 
 
 39
 AFFIRMED WITH SANCTIONS.
 
 
 
 [1]
 The proposed Supplemental Appendix consisted of five pages from Bales' deposition
 
 
 [2]
 Borowski also claims on appeal that the district court erred by not allowing him discovery regarding the terms of a settlement agreement reached between DePuy and Bales. The court ruled that the reasons for Bales' departure after Borowski's firing were irrelevant and immaterial. This ruling is reviewed under an abuse of discretion standard. Indianapolis Colts v. Mayor and City of Baltimore, 775 F.2d 177, 183 (7th Cir.1985). Borowski has provided this Court with nothing to doubt the propriety of the ruling. Any discovery of the reasons Bales left DePuy after replacing Borowski was not shown to bear relationship to the reasons Borowski was fired
 
 
 [3]
 Q. Are you familiar with situations when DePuy would purchase back from distributors who were no longer in the territory, either loaners or samples or other equipment?
 A. Un-huh (affirmative); Yes.
 Q. And under what circumstances would that be done?
 A. Basically taken at whatever value that they're perceived to have; they are used--a lot of them are beat up and broken. They would need to be current; they would need to be usable and then a fair market value was established and agreed upon.
 (Plaintiff's App. A34).
 
 
 [4]
 Q. Do you recall if Mr.--if at the time you heard this rumor [that Bales wanted to leave his position with DePuy] there was any discussion of an affair that Mr. Bales was having?
 MR. KNEBEL: I am going to object to that question and instruct him not to answer. That is so far afield from the issues in this case. I am not even certain it was proper to ask him that question. I instruct him not to answer.
 (Defendant's Br. 34).
 
 
 [5]
 Plaintiff's motion to supplement the record and for leave to file a "Supplemental Appendix" is denied. Defendant Bales' motion to strike Part II of Appellants' reply brief is granted
 
 
 [6]
 We are awarding fees under Rule 38 because both of the appeals in this case are frivolous. This Court cannot award fees under Rule 11 of the Federal Rules of Civil Procedure, see Hays v. Sony Corp., 847 F.2d 412, 420, No. 87-2663, slip op. at 15 (7th Cir. May 25, 1988), so that both Bales and DePuy must ask the district court to enforce the award of sanctions to be borne exclusively by Kramer