Harjit SINGH, Plaintiff,

v.

Arthur J. CURRY, Christine Curry, Sukhjit Gill, Barry H. Greenburg, and Nathan's Deli, Inc., an Illinois corporation, Defendants.

No. 86 C 8433.

United States District Court, N.D. Illinois, E.D.

Sept. 7, 1988.

Donald L. Johnson and Martin J. Schwartz, Chicago, Ill., for plaintiff.

Thomas W. Murphy and Robert A. Chaney, Edward A. Berman, Berman Roberts & Kelly, S. Ira Miller, Michael J. Rovell,

Robert D. Nachman and Mark Dupont, Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Currently before the Court are objections by plaintiff Harjit Singh's former attorneys Joseph Marconi and Douglas Morrison ("Marconi & Morrison") and defendants Arthur Curry, Christine Curry, Sukhjit Gill, Barry H. Greenburg and Nathan's Deli, Inc. ("defendants") to Magistrate James T. Balog's Report and Recommendation on defendants' motion for sanctions under Rule 11, Fed.R.Civ.P.

Defendants sought sanctions against Marconi & Morrison on a number of grounds. The Magistrate rejected all but one of those grounds. The Magistrate concluded that Marconi & Morrison had violated Rule 11 by including in the November 3, 1986 complaint a count under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. This Court had earlier concluded that the RICO count failed to state a claim upon which relief could be granted because the allegations of that count failed to allege a pattern of racketeering as required under RICO. In the RICO count, Singh alleged that defendants participated in a "scheme to defraud plaintiff from the benefit of [the May 5th Agreement]," and that the scheme consisted of six predicate acts of mail fraud. *Singh v. Curry*, 667 F.Supp. 603, 608 (N.D.Ill.1987). Because the six mailings did not result in independent harmful significance, but culminated in a single injury to a single victim, we found there was no pattern. *Id.* Defendants claim, and the Magistrate agreed, that Marconi & Morrison had failed to conduct a reasonable inquiry into the law concerning RICO actions prior to filing Count IV.

The Magistrate concluded that Marconi & Morrison did not conduct a reasonable inquiry into the law concerning RICO prior to filing the November 3, 1986 complaint because there were two Seventh Circuit decisions issued prior to the filing of the complaint which clearly rejected Singh's RICO theory. Essentially, the Magistrate concluded that if Marconi & Morrison had conducted a reasonable inquiry into the law prior to filing the complaint, they would have read these two cases and realized that Singh's RICO count was defective. The two cases are *Lipin Enterprises v. Lee*, 803 F.2d 322 (7th Cir.1986), and *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986). While we agree that had Marconi & Morrison read *Lipin* and *Morgan*, they should have concluded that Singh's RICO count was indeed deficient, we do not believe a *reasonable* prefiling inquiry would necessarily have resulted in Marconi & Morrison reading these two cases. The Magistrate did not base his decision on the ground that Marconi & Morrison actually read these opinions and proceeded to file the defective RICO count anyway. Rather, the Magistrate concluded that under an objective standard, a reasonable inquiry into the law would have revealed these two cases. We disagree.

*Lipin*, 803 F.2d 322, was decided on Thursday, October 9, 1986; *Morgan*, 804 F.2d 970, was decided on Thursday, October 23, 1986, twenty-five and ten days, respectively, before the November 3, 1986 complaint was filed. While this would ostensibly appear to have given Marconi & Morrison sufficient time to read these opinions, in reality it is very unlikely that either of these opinions would have been found during a "reasonable" prefiling investigation into the law.

There are obviously a number of ways a lawyer can learn about very recent Seventh Circuit opinions.[1] If the lawyer is representing a party in the case in which the opinion is issued, the lawyer will be notified by the Seventh Circuit's Clerk's Office that day by phone. If it is a particularly newsworthy opinion, the newspapers might run a story about the case the next day, and if a lawyer happens to read that newspaper they might learn about the opinion. How-

---

1. Set forth below are a number of facts that this Court deems appropriate to take judicial notice of under Fed.R.Evid. 201(b)(2) as facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Of course, should either party dispute these facts, they should move to be heard under Fed.R.Evid. 201(e).

ever, reading newspapers is ordinarily not the way one researches the law. The next way the average lawyer can learn about a recent Seventh Circuit opinion is to have access to all Seventh Circuit slip opinions which are currently available in law libraries and by subscription for $600.00 per year. The next source of recent Seventh Circuit decisions would be through one of the computer-assisted legal research methods. If access to the somewhat expensive computerized research methods was not possible, a lawyer could review the most recent issues of *West's Federal Case News* which indicates that "the cases summarized in [each] issue are those received from the Federal Courts during the week preceding this publication." The next most recent source of Seventh Circuit opinions would then be the *Federal Reporter* advance sheets.[2]

The newest Seventh Circuit opinions reach each of these sources at different times. In this case, *Lipin* and *Morgan* were decided twenty-five and ten days, respectively, prior to the filing of the complaint in this case. Although we lack information regarding exactly when *Morgan* and *Lipin* became generally available through each of these sources, we are familiar, in general, with the time frames in which new Seventh Circuit opinions reach these sources. The earliest, but not necessarily the quickest, way to find the latest Seventh Circuit pronouncement on a particular subject is to skim through the last two months of slip opinions. Because the Seventh Circuit opinions are not summarized in any manner, it is necessary to read through each opinion to see if it covers the subject matter you are researching. The number of opinions issued each month by the Seventh Circuit varies; in July there were over 80 opinions, while in June there were approximately 40. One would need to read at least two months worth of slip opinions if they wanted to be sure that they had found all opinions issued after the most recent advance sheets because the advance sheets usually contain Seventh Circuit opinions handed down two months earlier. A quicker, but more expensive, method to find the latest Seventh Circuit opinions would be to run a computer search. The computer services usually have the latest opinions five to seven days after they are issued. The last two sources of new opinions, *West's Federal Case News* and the *Federal Reporter* are usually available a month and two months, respectively, after the opinion is decided.[3]

The issue we need to decide is whether a reasonable prefiling inquiry into the law would have revealed *Morgan* and *Lipin* to Marconi & Morrison before they filed Singh's complaint on November 3, 1986. Given these general time frames, the only likely ways both *Morgan* and *Lipin* would have been found would have been through the computerized legal research services or by physically going through all the recent Seventh Circuit opinions which would be available at the federal court library or by subscription from the Seventh Circuit. *Lipin* might have been available in digested form in *West's Federal Case News*. While this type of very thorough research is the standard this Court's law clerks are held to, we are unwilling to conclude that Rule 11 requires such efforts at this point in time. The rule provides for a "reasonable" prefiling inquiry into the law. A reasonable inquiry would most likely include research into the latest advance sheets in the official reporters, but would not necessarily require the extremes that would have been required in this case for a prefiling inquiry to have revealed *Morgan* and *Lipin*. Ac-

---

**2.** There is also the Seventh Circuit Digest which is put out by the Seventh Circuit and is available in the federal court library. This, however, is no longer that useful in finding the latest Seventh Circuit opinions. Lately, the opinions are published in the reporter before they are digested in the Digest.

**3.** As we mentioned, these time frames are general time frames observed by this Court over the years in conducting research. However, we did take a fairly recent Seventh Circuit opinion on Rule 11 and check the actual dates. *Borowski v. DePuy, Inc.*, 850 F.2d 297 (7th Cir.1988), was decided by the Seventh Circuit on June 17, 1988. The Seventh Circuit slip opinion was only received in the federal court library on June 29, 1988. It showed up in *West's Federal Case News* in the July 1, 1988 issue which was received in the federal court library on July 11, 1988. It was published in the *Federal Reporter* advance sheet dated August 15, 1988, which was received in the federal court library on August 22, 1988.

cordingly, we decline to adopt the Magistrate's Report and Recommendation to the extent it assesses sanctions under Rule 11 against Marconi & Morrison for not having read *Morgan* and *Lipin* prior to filing Singh's complaint on November 3, 1986. Under the case law available to Marconi & Morrison before November 3, 1986, via a *reasonable* prefiling inquiry, the RICO count was well grounded in law.[4]

The defendants raise a number of objections to the Magistrate's Report and Recommendation, but essentially only re-argue the points already considered by the Magistrate. For the reasons set forth in the Magistrate's Report and Recommendation, we overrule defendants' objections and adopt the balance of the Magistrate's Report and Recommendation. It is so ordered.

**4.** Cf. *Schaefer v. Transportation Media, Inc.,* 859   F.2d 1251, 1256 n. 6 (7th Cir.1988).